MICHAEL J. STORTZ (SBN 139386)
michael.stortz@dbr.com
MATTHEW J. ADLER (SBN 273147)
matthew.adler@dbr.com
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

Attorneys for Plaintiff
HP INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HP INC., a Delaware Corporation,<br><br>          Plaintiff,<br><br>v.<br><br>ROBERT H. POWELL JR., d/b/a RK POWELL INDUSTRIES,<br><br>          Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff HP Inc., f/k/a Hewlett-Packard Company ("HP") hereby complains against Defendant Robert H. Powell Jr., d/b/a RK Powell Industries ("Powell") and alleges as follows:

## NATURE OF THE ACTION

1. HP is a leading technology company and provider of a broad array of consumer and business products, including without limitation desktop computers, laptops, tablets, and printers.

2. To service such products while under warranty, HP regularly contracts with third party service providers who perform in-warranty repair, service, and customer support for eligible HP products.

3. On July 12, 2006, HP and Powell entered into one such contract, entitled the "Hewlett-Packard Consumer Products Third Party Service Provider (3PSP) Agreement" (the "3PSP Agreement").  A true and correct copy of the 3PSP Agreement is attached hereto as Exhibit A and incorporated herein by reference.

4. Under the 3PSP Agreement, Powell was authorized to conduct in-warranty repairs for eligible HP products.  To conduct such repairs, Powell could order replacement computer parts from HP at no cost to him, and also seek reimbursement from HP for labor costs associated with in-warranty repairs.

5. In most instances, Powell was required to provide HP with the "old" computer parts replaced during a repair.  Certain categories of parts, e.g., batteries and power cords, had no return obligation.

6. In February 2016, HP observed that approximately half of the "old" computer parts returned by Powell in the preceding two months were still functioning.

7. HP also identified a sudden increase in the volume of claims submitted by Powell.  Whereas Powell had generally averaged 150 claims per month, he submitted over 600 claims in both January and February 2016.

8. These irregularities prompted HP to conduct an interview of Powell, followed by an in-depth investigation of all of Powell's claims over the prior two year-period, from January 2014 through February 2016.

9. HP's investigation revealed that Powell had perpetrated a fraudulent scheme against HP and committed repeated violations of the 3PSP Agreement.

10. Indeed, Powell had submitted in excess of 4,000 claims in this two-year timeframe, and approximately half of these were determined by HP as fraudulent, based on one or more factors as set forth below.

11. Powell thus obtained **hundreds** of computer parts from HP—at no cost to him. He also submitted **hundreds** of claims for labor reimbursement, and accepted payment from HP. Yet for half of Powell's claims submitted between 2014 and 2016, he did not actually conduct an in-warranty repair and thus had no basis to request a replacement part or seek any reimbursement.

12. Accordingly, HP brings this action to recover its damages caused by Powell's fraudulent scheme and numerous breaches of the 3PSP Agreement.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction pursuant to 28 U.S.C. section 1332(a), which grants district courts original jurisdiction of civil actions where the matter in controversy exceeds $75,000, exclusive of interests and costs, and the action is between citizens of different states.

14. This Court has personal jurisdiction over Powell pursuant to the forum-selection clause in the 3PSP Agreement, which provides: "The parties hereby submit to the jurisdiction of, and waive any venue objections against state and federal courts in Santa Clara County, California in any litigation arising out of this 3PSP Agreement." Ex. A., p. 5, § 19.F. Each of HP's claims for relief in this Complaint arises out of the 3PSP Agreement and/or Powell's obligations thereunder.

15. Venue in this district is proper pursuant to 28 U.S.C. section 1391(b).

**INTRADISTRICT ASSIGNMENT**

16. This action is appropriately assigned to the San Jose Division because the claims alleged herein arose in Santa Clara County.

**PARTIES**

17. HP is a corporation organized and existing under the laws of the State of

Delaware, with its principal place of business at 3000 Hanover Street, Palo Alto, CA 94304.

18. Powell is an individual residing in the State of Alabama, doing business as a sole proprietorship under the fictitious name RK Powell Industries. RK Powell Industries is not a separate legal entity from Powell, and as alleged herein Powell is personally liable for all of his acts and omissions conducted either in his own name or while using the name RK Powell Industries.

## FACTUAL ALLEGATIONS

### Key Terms of the 3PSP Agreement

19. The 3PSP Agreement became effective on July 12, 2006. *See* Ex. A, p. 1.

20. Pursuant to the 3PSP Agreement, HP appointed Powell as an authorized service provider to perform in-warranty repairs and support for eligible HP consumer products, including but not limited to consumer desktop and notebook computers. Ex. A, p. 1, § 2.A.

21. Powell's appointment was "subject to the terms and conditions of the 3PSP Agreement . . . ." Ex. A, p. 1, § 2.A.

22. Under the 3PSP Agreement, HP agreed to reimburse Powell for labor costs associated with in-warranty service on eligible HP products, in accordance with standard HP service-provider reimbursement rates. Ex. A, p. 2, § 4.D.

23. HP also agreed to provide Powell with parts to perform such repairs, at HP's expense. Ex. A, p. 2, § 4.D.

24. Powell, in turn, agreed to "complete initial problem diagnosis and identify correctly the problems on Eligible HP Consumer Products being serviced before requesting parts or service from HP"; "submit warranty claims for parts replacement and labor reimbursement using the standard HP claims process . . . ."; and "provide HP with complete and accurate information" with respect to each claim. Ex. A, p. 2, §§ 4.D, 4.F.

25. Powell further agreed that he was "eligible to receive free parts and labor cost reimbursement" *only* for "repairs performed on Eligible HP Consumer Products during the warranty term . . . ." Ex. A, p. 2, § 4.D.

26. Pursuant to the 3PSP Agreement, HP was entitled to investigate Powell "to

1  determine compliance with the terms and conditions set forth in the 3PSP Agreement." Ex. A, p.
2  4, § 16.A.

3      27. The 3PSP Agreement further provided that if HP's investigation indicated that
4  "more than 5% of warranty claims submitted for activities performed under the 3PSP Agreement
5  are fraudulent or invalid," or that "any term and condition within the 3PSP Agreement has been
6  violated," Powell "shall be obligated to reimburse HP for all reasonable actual costs associated
7  with the audit and with the violation of the 3PSP Agreement." Ex. A, p. 5, § 16.F.

8      28. By its terms, the 3PSP Agreement was initially scheduled to terminate on May 31,
9  2007. *See* Ex. A, p. 5, § 18.

10     29. Before May 31, 2007, HP and Powell agreed to extend the 3PSP Agreement for
11 another year, without any other modification to the 3PSP Agreement.

12     30. HP and Powell have since agreed to multiple extensions of the 3PSP Agreement,
13 without any other modifications to any the original contract terms.

14     31. On April 29, 2016, in light of Powell's conduct as alleged herein, HP sent written
15 notice to Powell stating that the 3PSP Agreement was terminated for cause as of April 29, 2016,
16 pursuant to Section 18.C. *See* Ex. A, p. 5, § 18.

17                           **HP's Interview of Powell and Subsequent Investigation**

18     32. In late February 2016, an HP Account Manager tested several hard drives recently
19 returned by Powell and observed that approximately half of them were still functioning.

20     33. The Account Manager also noted a sudden uptick in the number of claims
21 submitted by Powell in prior two months, i.e., January and February 2016.

22     34. Due to these anomalies, HP contacted Powell to schedule an interview concerning
23 his claim activity.

24     35. On March 9, 2016, members of HP's Global Fraud Investigations department
25 conducted a videoconference interview of Powell to inquire about his suspect warranty service
26 claims.

27     36. During the interview, Powell admitted that he had conducted repairs without
28 performing initial diagnostic testing. Powell also assumed responsibility for the high number of

functioning parts he had recently returned to HP.

37. In light of Powell's concessions, HP proceeded to conduct an in-depth investigation of all of Powell's claims over the prior two-year period, i.e., from January 28, 2014 through February 24, 2016.

38. HP's investigation revealed that, during this two-year timeframe, Powell had submitted approximately 4,350 warranty service claims either for replacement parts or labor costs reimbursement.

39. As set forth below, HP determined that *over half of these*—at least 2,181 claims—were fraudulent.

**Powell's Breaches of the 3PSP Agreement and Fraudulent Scheme Perpetrated on HP**

40. In its investigation, HP identified Powell's fraudulent claims as those containing one or more of the following circumstances:

   a. **Multiple, identical replacement parts** ordered for one HP product, e.g., up to five hard drives ordered for a single computer with a unique serial number;

   b. Claims submitted for a serial number where **HP had no record of manufacture or shipping**, or where HP's records showed the **computer was sold or shipped outside the United States**; and

   c. Claims submitted for **sequential serial numbers**, e.g., 1AB1111111, 1AB1111112, 1AB1111113, and so forth.

41. For example, HP's records reflect that with respect to over 600 claims, Powell ordered four identical parts for the same serial number. In over 80 claims, Powell ordered five or more identical parts for the same serial number.

42. In one such case, for the HP product bearing serial number 4CS3520316, Powell ordered six (6) identical replacement hard drives.

43. Similarly, for an HP product bearing serial number 5CD3466W5H, Powell ordered five (5) identical keyboards.

44. HP's records also show that Powell made 184 claims for reimbursement with

1  respect to HP products that he could never have serviced because they were sold or shipped
2  outside the United States.

3     45.    HP's records also reflect that between October 22, 2015 and December 28, 2015—
4  just over two months—Powell ordered replacement parts for fifty-five (55) HP products with
5  sequential serial numbers.

6     46.    Additionally, approximately 46% of Powell's claims for replacement parts during
7  this two-year timeframe were for batteries, power adapters, cords, keyboards and other items that
8  had no return obligation, i.e., Powell was *not* required to return the "old" part upon obtaining the
9  replacement part.

10    47.    Ultimately, HP's records show that Powell repeatedly represented to HP that he
11  needed a specific part to conduct a repair, ordered the part from HP, and obtained the part from
12  HP—but Powell could not have actually used the part for an in-warranty repair.

13    48.    Similarly, HP's records confirm that Powell repeatedly represented to HP that he
14  had in fact completed an in-warranty repair, claimed reimbursement from HP for the labor
15  associated with the same, and accepted payment from HP—but, again, Powell could not have
16  actually conducted the repair.

17    49.    By successfully perpetrating this fraudulent scheme, Powell was able to submit
18  2,181 claims where—unbeknownst to HP—he (1) obtained free replacement parts to use as he
19  wished; and (2) received payment from HP for labor that he never performed.

20    50.    Accordingly, Powell is liable for breach of contract and several other claims as
21  alleged herein.

22                        **FIRST CLAIM FOR RELIEF**
23                              **(Breach of Contract)**

24    51.    HP realleges and incorporates by reference paragraphs 1 through 50 of this
25  Complaint, as if fully alleged herein.

26    52.    The 3PSP Agreement is a valid and enforceable written contractual agreement that
27  was entered into by and between HP and Powell.

28    53.    HP has performed all of its covenants, conditions, promises, and obligations

1  required to be performed under the 3PSP Agreement and in accordance with the terms and
2  conditions of the 3PSP Agreement.

3     54. Under the 3PSP Agreement, Powell agreed that he was "eligible to receive free
4  parts and labor cost reimbursement" *only* for "repairs performed on Eligible HP Consumer
5  Products during the warranty term . . . ." Ex. A, p. 2, § 4.D.

6     55. Powell breached the 3PSP Agreement on each occasion that he sought and
7  obtained a free part from HP when he did not in fact perform an in-warranty repair on an eligible
8  HP product.

9     56. Powell also breached the 3PSP Agreement on each occasion that he requested and
10 received reimbursement for labor costs when he did not in fact perform an in-warranty repair on
11 an eligible HP product.

12     57. The terms and conditions of the 3PSP Agreement further include Powell's
13 obligation to provide HP with "*accurate* information" with respect to each claim for replacement
14 parts and/or labor reimbursement. Ex. A, p. 2, § 4.F (emphasis added).

15     58. Powell breached the 3PSP Agreement on each occasion that he represented to
16 HP—inaccurately—that he needed a part, or was entitled to labor reimbursement, when he did
17 not in fact perform an in-warranty repair on an eligible HP product.

18     59. As a direct and foreseeable result of Powell's breaches of the 3PSP Agreement,
19 HP has suffered damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

22     60. HP realleges and incorporates by reference paragraphs 1 through 59 of this
23 Complaint, as if fully alleged herein.

24     61. A covenant of good faith and fair dealing is implied in every contract, including
25 the 3PSP Agreement.

26     62. The 3PSP Agreement is a valid and enforceable written contractual agreement that
27 was entered into by and between HP and Powell.

28     63. HP has performed all of its covenants, conditions, promises, and obligations

1  required to be performed under the 3PSP Agreement and in accordance with the terms and
2  conditions of the 3PSP Agreement.

3      64.    Powell acted in a manner that frustrated the basic purpose of the 3PSP Agreement
4  and interfered with HP's rights and benefits under the 3PSP Agreement.

5      65.    Powell breached the implied covenant of good faith and fair dealing on each
6  occasion that he sought and obtained a free part from HP when he did not in fact perform an in-
7  warranty repair on an eligible HP product.

8      66.    Powell also breached the implied covenant of good faith and fair dealing on each
9  occasion that he requested and received reimbursement for labor costs when he did not in fact
10 perform an in-warranty repair on an eligible HP product.

11     67.    As a direct and foreseeable result of Powell's breaches of the implied covenant of
12 good faith and fair dealing, HP has suffered damages in an amount to be proven at trial.

13 **THIRD CLAIM FOR RELIEF**

14 **(Fraud)**

15     68.    HP realleges and incorporates by reference paragraphs 1 through 67 of this
16 Complaint, as if fully alleged herein.

17     69.    Between January 28, 2014 and February 24, 2016, Powell submitted
18 approximately 2,181 claims which, based on HP's investigation, were determined to be fraudulent
19 either because Powell ordered multiple, identical replacement parts for a single HP product;
20 submitted claims for products with sequential serial numbers; or submitted claims related to a
21 serial number where HP had no record of manufacture or shipping, or where the product was sold
22 or shipped outside the United States.

23     70.    With respect to each of these claims, Powell made false and fraudulent
24 misrepresentations of fact to HP concerning his need for computer parts to conduct repairs and his
25 entitlement to reimbursement for labor costs.

26     71.    Specifically, Powell represented to HP that certain facts were true, i.e., that the
27 part he ordered was required for an in-warranty repair of an eligible HP product, or the labor costs
28 reimbursement he claimed was based on actual labor he performed to complete an in-warranty

1 repair of an eligible HP product.

2      72.    These fraudulent misrepresentations were each conveyed to HP through its Partner First Portal (https://partner.hp.com), a dedicated website for third-party service provider claims.

     73.    With respect to each of these claims, Powell likewise concealed from HP or failed to disclose to HP the fact that Powell either had no need for the replacement parts to conduct repairs and/or did not actually perform the labor for which he sought reimbursement.

     74.    Powell had a duty to disclose the foregoing facts because Powell and HP were engaged in a contractual relationship, such facts were known only to Powell, and HP could not have reasonably discovered such facts.

     75.    Powell's representations as alleged herein were false.

     76.    At the time Powell made each of these representations, Powell knew they were false.

     77.    Powell intended to deceive HP and/or intended to conceal facts so that HP would rely on his representations, in order to induce HP to ship him free parts and/or reimburse him for claimed labor costs.

     78.    As to each of Powell's claims, HP actually and reasonably relied on Powell's representations, which caused HP to ship free parts to Powell, reimburse him for claimed labor costs, and otherwise continue to do business with Powell.

     79.    Had HP known that Powell's representations were in fact false, or had Powell disclosed the concealed information to HP, HP would not have shipped him free parts, would not have paid any reimbursement claims, and would not have continued to do business with Powell.

     80.    As a direct and foreseeable result of Powell's misrepresentations and/or fraudulent omissions, and HP's reliance on the same, HP has suffered damages in an amount to be proven at trial.

     81.    Additionally, by engaging in the fraudulent acts herein alleged, Powell has acted maliciously, oppressively, and in conscious disregard for HP's rights. HP therefore seeks punitive and exemplary damages against Powell, to the extent permitted by law.

## FOURTH CLAIM FOR RELIEF

### (Negligent Misrepresentation)

82. HP realleges and incorporates by reference paragraphs 1 through 81 of this Complaint, as if fully alleged herein.

83. Between January 28, 2014 and February 24, 2016, Powell submitted approximately 2,181 claims which, based on HP's investigation, were determined to be fraudulent either because Powell ordered multiple, identical replacement parts for a single HP product; submitted claims for products with sequential serial numbers; or submitted claims related to a serial number where HP had no record of manufacture or shipping, or where the product was sold or shipped outside the United States.

84. With respect to each of these claims, Powell made false and fraudulent misrepresentations of fact to HP concerning his need for computer parts to conduct repairs and his entitlement to reimbursement for labor costs.

85. Specifically, Powell represented to HP that certain facts were true, i.e., that the part he ordered was required for an in-warranty repair of an eligible HP product, or the labor costs reimbursement he claimed was based on actual labor he performed to complete an in-warranty repair of an eligible HP product.

86. These fraudulent misrepresentations were each conveyed to HP through its Partner First Portal (https://partner.hp.com), a dedicated website for third-party service provider claims.

87. Powell's representations as alleged herein were false.

88. At the time Powell made each of these representations, Powell had no reasonable grounds for believing them to be true.

89. Powell intended for HP to rely on his representations, in order to induce HP to ship him free parts and/or reimburse him for claimed labor costs.

90. As to each of Powell's claims, HP actually and reasonably relied on Powell's representations, which caused HP to ship free parts to Powell, reimburse him for claimed labor costs, and otherwise continue to do business with Powell.

91. Had HP known that Powell's representations were in fact false, HP would not have

1  shipped him free parts, would not have paid any reimbursement claims, and would not have
2  continued to do business with Powell.

3    92.    As a direct and foreseeable result of Powell's negligent misrepresentations, and
4  HP's reliance on the same, HP has suffered damages in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### (Unjust Enrichment)

7    93.    HP realleges and incorporates by reference paragraphs 1 through 92 of this
8  Complaint, as if fully alleged herein.

9    94.    Between January 28, 2014 and February 24, 2016, Powell submitted
10  approximately 2,181 claims which, based on HP's investigation, were determined to be fraudulent
11  either because Powell ordered multiple, identical replacement parts for a single HP product;
12  submitted claims for products with sequential serial numbers; or submitted claims related to a
13  serial number where HP had no record of manufacture or shipping, or where the product was sold
14  or shipped outside the United States.

15    95.    Powell has been unjustly enriched, at HP's expense, as a result of his conduct.
16  Such enrichment includes thousands of dollars in replacement parts and reimbursement for
17  claimed labor, which HP provided to Powell in reliance on his fraudulent misrepresentations.

18    96.    HP's detriment, and Powell's enrichment, are traceable to, and resulted directly
19  and proximately from, Powell's misconduct as alleged herein.

20    97.    It would be inequitable for Powell to retain the parts and reimbursement payments
21  he has received from HP as a result of his fraudulent scheme.

22    98.    HP is entitled to restitution and disgorgement from Powell of all amounts obtained
23  by Powell as a result of his misconduct as alleged herein.

## PRAYER FOR RELIEF

25    WHEREFORE, HP prays for relief as follows:

26    A.    For compensatory damages according to proof;

27    B.    For restitution and disgorgement according to proof;

28    C.    For prejudgment and postjudgment interest on any amount awarded;

D.  For an award of punitive and exemplary damages against Powell;

E.  For reasonable attorneys' fees and costs of suit; and

F.  For such additional and further relief as the Court deems just and proper.

Dated: June 8, 2017

DRINKER BIDDLE & REATH LLP

By: /s/ Matthew J. Adler
Michael J. Stortz
Matthew J. Adler

Attorneys for Plaintiff
HP INC.

**DEMAND FOR JURY TRIAL**

Plaintiff HP Inc. hereby demands a trial by jury of all issues so triable.

Dated: June 8, 2017

DRINKER BIDDLE & REATH LLP

By: /s/ Matthew J. Adler
Michael J. Stortz
Matthew J. Adler

Attorneys for Plaintiff
HP INC.

**EXHIBIT A**



**HEWLETT-PACKARD CONSUMER PRODUCTS
THIRD PARTY SERVICE PROVIDER (3PSP) AGREEMENT**

This Service Agreement ("Agreement" or "3PSP Agreement") effective this __12__ day of __JULY__, 20 _06_ ("Effective Date"), is entered into by and between Hewlett-Packard Company ("HP") and __RK POWELL INDUSTRIES__ ("3PSP") for the purpose of setting forth the terms and conditions for 3PSP's service on Eligible HP consumer products. This Agreement is offered solely for the purposes of allowing 3PSP to perform warranty hardware service & support on Eligible HP consumer products. If 3PSP violates any part of this Agreement, HP will notify 3PSP, and, if such violation is not cured within 30 days or if a similar violation occurs a second time, HP may immediately terminate this Agreement.

1. DEFINITIONS
    A. "Eligible HP Consumer Products" means the current HP consumer computer and peripheral products that 3PSP is allowed to provide warranty hardware repair/support service for under the 3PSP Agreement. Eligible HP Consumer Products include Consumer Desktop PCs, Pavilion Media PCs, Digital Media Receivers, Consumer Notebooks, DeskJet Printers, OfficeJets, Print/Scan/Copy All-in-Ones, ink jet copiers, ink jet fax machines, PhotoSmart Printers, PhotoSmart Scanners, PhotoSmart Digital Cameras, ScanJet Scanners, CD-Writers, DVD-Writers, and Digital Projectors.
    B. "HP Customer-Selected Service Provider Program" or "3PSP Program" means the HP program that authorizes 3PSP to perform warranty and hardware repair service on Eligible HP Consumer Products at Customer as set out in this Agreement, both in and out of warranty period, in the United States (including U.S. territories) and Canada only.
    C. "Information Resources" means collectively (1) 3PSP Program Guide, (2) the ASP Program Process Guides, (3) Product Reference Guides (4) Product support & training documentation, and (5) the HP Partnership web site https://partner.americas.hp.com and other HP consumer products support/service web sites.
    D. "Device(s)" means a consumer hardware Product.
    E. "ASP" means HP Authorized Support Provider
    F. "Customer(s)" means recipient of Support.
    G. "Marks" means designated name, symbol, trademarks, service marks, logotypes, trade names, and insignia belonging to HP or 3PSP.
    H. "Support" means Product Repair, Facilitation of Return to HP for Repair and/or Facilitation of an HP Exchange Unit...
    I. "Other 3PSP" means other entity(-ies) who currently has a 3PSP Agreement with HP.
    J. "Other HP Authorized Service Delivery Partner" means other entity (-ies) who currently has an HP Authorized Support Provider Agreement with HP.
    K. "United States" or "U.S." means the fifty (50) states and the District of Columbia.
    L. "Warranty Service" means hardware repair service or support performed on Eligible HP Consumer Products that are covered by standard Eligible HP Product warranty for those Eligible HP Consumer Products.
    M. "Personal Data" shall mean any information related to any identified or identifiable natural or legal person, such as customers, subcontractors, partners or any other third party (including such third parties' employees) and any other additional data deemed as personal data under the applicable personal data protection laws, which are available to 3PSP for processing under HP's 3PSP program.

2. APPOINTMENT
    A. HP appoints 3PSP to perform warranty and hardware repair service on Eligible HP Consumer Products at Customer. 3PSP's appointment is subject to the terms and conditions of the 3PSP Agreement and the 3PSP Program Guide incorporated herein by reference.
    B. 3PSP understands that only Eligible HP Consumer Products that are owned and operated by Customer, are eligible for coverage under this Agreement.
    C. 3PSP warrants that all information and benefits obtained through the 3PSP Program or through the 3PSP Agreement, including but not limited to warranty parts replacement, labor cost reimbursement, and Information Resources, shall only be used internally within 3PSP's organization solely for the purpose of providing Support for Eligible HP Consumer Products at Customer. No other right, title, or interest in the information provided through these services is granted to 3PSP.
    D. 3PSP shall not discuss or disclose the terms of the 3PSP Agreement and the Program Guide with or to any third party except Customer.
    E. 3PSP accepts appointment pursuant to the terms and conditions herein.

3. CHANGES
    HP reserves the right to make changes to its 3PSP Program at any time, and will provide notification of changes to 3PSP in writing and will expect compliance within thirty (30) days from the receipt of notice. HP will notify Customer that changes to its 3PSP Program has been made and which Eligible HP Consumer Products have been affected.

4. 3PSP REQUIREMENTS
    3PSP requirements to perform service features are set forth in the Program Guide and in this section as follows:
    A. Service/Support Authorization
        Only authorized 3PSP outlets may support/service HP products
    B. Requirement for HP Account Number and Credit Limit
        3PSP must obtain an HP account number and credit limit by completing a Credit Application form, obtained from the Partnership Web, under Support. The application must be completed and returned as instructed. The 3PSP will receive their HP account number once the application has been processed.

C.  Technical Training Requirements:
  1. Service training and certification to industry standards completed by Certified Technicians shall be the sole financial responsibility of 3PSP.
  2. 3PSP shall solely determine the number of Certified Technicians required to meet the repair needs of its Customers.
  3. 3PSP and Certified Technicians shall adhere to all HP training policies and processes, including adherence to cancellation and refund policies as set forth in the Program Guide.
  4. Technicians will no longer be authorized to service Eligible HP Consumer Products when they leave the employ of 3PSP, unless Other 3PSP or HP ASP subsequently hires them.

D.  Requirements for the provision of Warranty Service
  1. 3PSP shall receive labor cost reimbursement based standard HP service-provider rates as set forth in the HP Partnership web site at https://partner.americas.hp.com.
  2. 3PSP shall only be eligible to receive free parts and labor cost reimbursement for repairs performed on Eligible HP Consumer Products during the warranty term of Eligible HP Consumer Products.
  3. 3PSP shall submit warranty claims for parts replacement and labor reimbursement using the standard HP claims process set forth in the Program Guide.
  4. 3PSP must complete initial problem diagnosis and identify correctly the problems on Eligible HP Consumer Products being serviced before requesting parts or service from HP.
  5. 3PSP understands that free parts provided for parts replacement may be used for warranty repairs only of Eligible HP Consumer Products.
  6. 3PSP understands that after the warranty period of Eligible HP Consumer Products, 3PSP will not receive free parts or labor reimbursements when performing service.
  7. 3PSP understands that the warranty term applicable for each Eligible HP Product is specific for that HP Eligible Product.
  8. 3PSP understands that Eligible HP Consumer Products that require repair and are under warranty may use any of the ASP support options applicable to that Eligible HP Consumer Product, which could be repair, return to HP for repair, and/or unit exchange strategy.
  9. 3PSP shall adhere to all HP part and labor cost reimbursement processes set forth in the Program Guide.
  10. 3PSP understands that HP will not provide parts and labor reimbursements for repairs to Eligible HP Consumer Products that are caused by:
      1) refill of toner or ink cartridges
      2) replacement of consumable items such as toner, ink cartridges, paper & other media
      3) preventative maintenance
      4) products not used within specified operating environment
      5) reconfiguring non-HP software
      6) network troubleshooting
      7) cleaning of unit exterior
      8) use of parts that are not refurbished or supplied by HP
      9) all out-of-warranty service or facilitation
      10) visible abuse or shipping damages; and
      11) use of Eligible HP Consumer Products with products, media or software not intended to be used with Eligible HP Consumer Products as specified within the user manual that accompanies Eligible HP Consumer Products when first purchased by Customer.

E.  Requirements for Claim Filing Limitations
  1. HP will not authorize 3PSP in-warranty claim reimbursements on the following:
      1) Labor-only claims on non-customer owned units.
      2) More than one Labor-Only claim per unit/serial number per 3PSP.
      3) Additional claims on a unit/serial number within the period of 30 days after the initial claim was filed.

F.  Requirements for Warranty Claim Compliance
  2. It is the responsibility of the 3PSP to provide HP with complete and accurate information as required by each of the claim processes: web, telephone or mail. Failing to do so will result in, at a minimum, a delay in processing your claim, HP's refusal to honor the 3PSP reimbursement claim altogether or termination from HP's ASP program.
  3. Common grounds for non-compliance include:
      1) falsifying proof of purchase documentation
      2) providing reseller/technician information instead of customer details
      3) furnishing vague or incomplete product failure & repair descriptions, for example: "Product broken" and "product fixed."

G.  Requirements for the provision of Parts Services
  1. 3PSP may receive a discount on parts and exchange units for HP Products listed on HP's Price List. Parts/units purchases are warranted as set out in the HP ASP Program Guides.
  2. 3PSP is required to return defective core parts to HP within 30 calendar days of placing the exchange part order. HP will bill 3PSP full core part charge if the defective core has not been returned within 30 days.
  3. 3PSP may return unused parts and exchange units purchased which are unopened and in re-saleable condition within 30 days (depending on the product family) from the date of purchase. Acceptance of such parts and issuance of a return credit will be contingent upon compliance with the requirements of this section and presentation of an invoice, order, or other documentation that substantiates the original purchase transaction. All credits for returns in this category will be used to offset any sums owed HP, and the remaining balance, if any, will be refunded to 3PSP in the form of credits to their accounts. In the event 3PSP has excess parts not otherwise returnable under this section, 3PSP may contact HP, and HP, at its sole discretion and depending upon HP's then current need for such parts, may negotiate repurchase of such parts under mutually agreeable terms.

H. Requirements for the provision of Repair Service

3PSP may only use HP's service organization to perform warranty repair service in the event that (1) 3PSP is unable to repair Eligible HP Consumer Products, (2) Eligible HP Consumer Products that require repair are outside the scope of the 3PSP Program, or (3) 3PSP has limited capability to provide the warranty repair service required or any other limitations set forth in the Program Guide.

I. Requirements for the use of Diagnostic Tools

HP will require the use of HP's diagnostic tools for certain HP products and the 3PSP may be required to purchase these tools through HP.

5. PROCESSING AND USE OF PERSONAL DATA

A. 3PSP may process and use the Personal Data only to perform its obligations under this Agreement and may disclose Personal Data only to those 3PSP employees that have a need to know for the performance of such obligations and are bound by confidentiality obligations not less restrictive than those contained in this Agreement.

B. 3PSP may not disclose the Personal Data to any other third party, even for their preservation, nor transfer the Personal Data to any third country without the prior written consent of HP. In case 3PSP is authorized by HP for subcontracting any services involving collecting, using, storing, transferring and otherwise processing Personal Data, 3PSP will agree with its subcontractors to protect and process the Personal Data under terms no less restrictive than those contained in this Agreement.

C. Security Measures

3PSP shall use the same degree of care, but never less than a reasonable degree of care, to prevent unauthorized use, dissemination or publication of the Personal Data, as its uses to protect its own information of similar nature, and will implement any technical and organizational measures to protect Personal Data which are required by applicable law.

At a minimum, 3PSP agrees:

1) to implement appropriate technical and organizational measures to protect Personal Data against accidental or unlawful destruction or loss, unauthorized disclosure or access, in particular where processing involves the transmission of Personal Data over a network, alteration, and all other unlawful forms of processing.

2) to implement appropriate procedures to ensure that unauthorized persons will not have access to the data processing equipment used to process the Personal Data, any persons it authorizes to have access to the Personal Data will respect and maintain the confidentiality and security of the Personal Data, and the measures and procedures that it uses will be sufficient to comply with all applicable law.

3) to act only on instruction from HP in connection with protecting, collecting, storing, transferring and otherwise processing of Personal Data.

4) not to copy or reproduce any Personal Data without the express written permission of HP, except as technically necessary to comply with this Agreement (e.g. duplication of data stocks as backup protection against loss of data).

5) to inform HP promptly in writing if it becomes aware of any unauthorized use or disclosure of Personal Data by itself or others.

6) to adhere to all applicable export and personal data laws, regulations and rules when collecting, using, storing, transferring and otherwise processing Personal Data.

7) to handle any Personal Data in accordance with then current HP Privacy Policy.

D. Records

Upon request by HP or upon termination of this Agreement, 3PSP shall deliver to HP any Personal Data in its possession and destroy any copies of Personal Data in the 3PSP's files, unless otherwise required under operation of law.

6. HP RESPONSIBILITIES

A. HP shall provide 3PSP with up-to-date Information required by 3PSP to perform responsibilities under the HP ASP Program and the 3PSP Agreement.

B. HP shall provide 3PSP with the current parameters of the HP Consumer Services Performance Measurement Program.

7. COPYRIGHTED MATERIALS

Except as set forth herein, HP copyrighted materials may not be copied or reproduced in any manner. All training materials, tests, and service manuals are copyrighted materials. 3PSP will not modify, adapt, prepare derivative or collective works, transfer, sell, sublicense, lease, distribute publicly, or in any manner commercially exploit the HP copyrighted materials provided. All copies including, but not limited to, hardcopy, magnetic, optical, or electronic copies made by 3PSP, must bear the copyright notice(s) contained in or on the original.

8. MARKS

A. 3PSP shall not use any HP Marks in any manner that may imply or suggest that 3PSP is or may be a branch or entity of HP. 3PSP shall promptly discontinue such use of an HP Mark upon request.

B. HP permits 3PSP, in describing its relationship with HP, to identify itself as an HP 3PSP for those Eligible HP Consumer Products at Customer, and only those Eligible HP Consumer Products at Customer, the Agreement permits 3PSP to service.

C. Display of HP Marks shall be in good taste and in a manner that preserves their value as HP Marks. Use of HP Marks shall be at all times subject to HP's standards, policies and guidelines available at the HP Partnership web and/or Channel Services Network. All rights or purported rights in HP Marks acquired through 3PSP's use belong solely to HP and will inure to the benefit of HP. HP reserves all rights under law or in equity for misuse of HP Marks.

D. HP reserves the right to require 3PSP to suspend its use of any HP Marks immediately, without prior notice, without liability.

E. 3PSP grants HP the non-exclusive, royalty-free right to display 3PSP's marks in advertising and promotional material. HP shall display 3PSP's marks in good taste, in a manner that preserves their value as 3PSP's marks, and in accordance with any standards provided by 3PSP for their display. Any rights or purported rights in 3PSP marks acquired through HP's use belong solely to 3PSP and will inure to the benefit of 3PSP.

F. 3PSP and Customer shall not register or use any internet domain name or URL which contains HP's trademarks (e.g. "HP", "hp" or "Hewlett-Packard") in whole or in part or any other name which is confusingly similar hereto.

9. **INTELLECTUAL PROPERTY INDEMNIFICATION BY HP**
    A. HP will defend or settle any claim against 3PSP that the Eligible HP Product parts furnished under this 3PSP Agreement infringe a patent, utility model, industrial design, copyright, trade secret, mask work or trademark in the country where 3PSP uses the Eligible HP Product part in accordance with this 3PSP Agreement, provided 3PSP:
        1) was not at fault;
        2) promptly notifies HP in writing of the claim; and
        3) cooperates with HP in, and grants HP sole control of the defense or settlement.
    B. HP will pay infringement claim defense costs, settlement amounts and court-awarded damages. If such claim appears likely, HP may either modify the Eligible HP Product parts, procure any necessary license, or replace it. If HP determines none of these alternatives is reasonably available, HP will refund 3PSP's purchase price upon return of the part if within one year of delivery, or the part's net book value thereafter.
    C. HP has no obligation for any claim of infringement arising from:
        1) HP's compliance with 3PSP's designs, specifications or instructions;
        2) HP's use of technical information or technology provided by 3PSP;
        3) modifications by 3PSP or a third party;
        4) product use prohibited by specifications or related application notes; or
        5) use of the part with products that are not HP branded.
    D. These terms state HP's entire liability to 3PSP for claims of intellectual property infringement.

13. **INTELLECTUAL PROPERTY INDEMNIFICATION BY 3PSP**
    A. 3PSP will defend or settle any claim against HP that the 3PSP Marks used in accordance with this 3PSP Agreement infringe a mark in any country where HP uses the 3PSP Mark in accordance with this 3PSP Agreement, provided HP:
        1) promptly notifies 3PSP in writing of the claim; and
        2) cooperates with 3PSP in, and grants 3PSP sole control of, the defense or settlement.
    B. 3PSP will pay infringement claim defense costs, settlement amounts and court-awarded damages. If such claim appears likely, 3PSP may either modify the 3PSP Mark, procure any necessary license, or replace the 3PSP Mark.
    C. 3PSP has no obligation for any claim of infringement arising from:
        1) modifications of the 3PSP Mark by HP or a third party.
    D. These terms state 3PSP's entire liability for claims of trademark infringement.

14. **WARRANTIES**
    A. HP MAKES NO WARRANTY OF ANY KIND WITH REGARD TO THE HP INFORMATION PROVIDED HEREUNDER. HP SPECIFICALLY DISCLAIMS THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.
    B. HP MAKES NO WARRANTY FOR PRODUCT DEFECTS RESULTING FROM: (1) IMPROPER OR INADEQUATE MAINTENANCE BY 3PSP; (2) UNAUTHORIZED MODIFICATIONS BY 3PSP; (3) IMPROPER SITE PREPARATION AND (4) UNAUTHORIZED MAINTENANCE OR REPAIR.
    C. HP will not be liable for performance delays or for non-performance due to causes beyond its reasonable control. HP will not be liable for any damages in connection with HP's furnishing of or 3PSP's use of HP information.

15. **LIMITATION OF REMEDIES AND LIABILITY**
    A. 3PSP is solely responsible for all maintenance services that 3PSP performs. HP is not liable for any damage to HP Products repaired by 3PSP, whether in or out of warranty. In addition, HP is not responsible for the quality or punctuality of repairs made by 3PSP.
    B. To the extent HP is held legally liable to 3PSP, HP's liability is limited to:
        1) payments described in Section 13 above;
        2) damages for bodily injury up to a limit of U.S. $1,000,000;
        3) direct damages to tangible property up to a limit of U.S. $1,000,000;
        4) other direct damages for any claim based on a material breach of any term in this Agreement up to a limit of U.S. $1,000,000.
    C. Notwithstanding Section 15 b) above, in no event will HP or its affiliates, subcontractors or suppliers be liable for any of the following:
        1) actual loss or direct damage that is not listed in 15 b) above;
        2) damages for loss of data, or software restoration;
        3) damages relating to 3PSP's procurement of substitute products or services (i.e., "cost of cover"); or
        4) incidental, special or consequential damages (including downtime costs or lost profits, but excluding payments described in Section 13 above and damages for bodily injury).
    D. THE REMEDIES PROVIDED HEREIN ARE 3PSP'S SOLE AND EXCLUSIVE REMEDIES.

16. **AUDIT**
    A. HP may audit 3PSP to determine compliance with the terms and conditions set forth in the 3PSP Agreement
    B. HP may contact and survey the customers whose units the 3PSP has serviced under HP's in-warranty ASP program.
    C. Upon HP's request, 3PSP shall make all records and documents pertaining to the completion of activities set forth in the 3PSP Agreement available to HP for HP's review.
    D. 3PSP must return to HP all defective cores for all spare parts that are classified as exchange parts within (30) days.
    E. Upon HP's request, 3PSP shall return defective HP spare parts used for repairs of Eligible HP Consumer Products under evaluation within fifteen (15) working days for HP's review.

F. If HP's audit findings indicate that more than 5% of warranty claims submitted for activities performed under the 3PSP Agreement are fraudulent or invalid, or that any term and condition within the 3PSP Agreement has been violated, 3PSP shall be obligated to reimburse HP for all reasonable actual costs associated with the audit and with the violation of the 3PSP Agreement.

G. HP may invoice 3PSP or debit 3PSP's HP parts account for all improperly claimed labor reimbursements and HP parts, or for other amounts imposed as a result of HP's audit findings.

H. HP may allow 3PSP thirty (30) days to cure a violation revealed by an HP audit. If 3PSP fails to cure the violation in that time or if a similar violation occurs a second time, HP may terminate this Agreement upon ten (10) days prior written notice to 3PSP.

17. COMPLIANCE

A. HP reserves the right to determine at any time whether 3PSP can adequately perform warranty and hardware repair service on Eligible HP Consumer Products.

B. 3PSP agrees to provide Support to its Customers at a level that meets the parameters of the HP Consumer Services Performance Measurement Program.

C. 3PSP shall comply with all policies and processes for Eligible HP Consumer Products set forth at HP Partnership web site at https://partner.americas.hp.com.

D. 3PSP shall be fully responsible for Certified Technicians' compliance with the requirements and limitations set forth in the 3PSP Agreement and in the Program Guide.

E. Without limiting the foregoing, 3PSP specifically agrees to follow standard business practices, to comply with all applicable laws, regulations and program rules and to seek a high level of customer satisfaction in delivering the services to HP Customers.

18. TERM AND TERMINATION

A. This 3PSP Agreement shall continue from the Effective Date through May 31, 2007, unless otherwise terminated.

B. 3PSP may terminate this Agreement at any time upon written notice to HP. HP may terminate this Agreement at any time upon 30 days written notice to ASP.

C. HP may terminate this 3PSP Agreement for cause at any time without written notice to 3PSP, if 3PSP submits fraudulent or inappropriate warranty claims.

D. If 3PSP violates any part of this 3PSP Agreement or any other Agreement with HP or fails to pay any sum due HP, HP may immediately terminate this 3PSP Agreement.

E. Upon termination or expiration of this 3PSP Agreement for any reason, 3PSP shall immediately cease representing itself as a participant in the 3PSP Program and shall immediately cease any activity permitted by the 3PSP Agreement.

F. Upon termination, non-compliance, or expiration of the 3PSP Agreement for any reason, all licenses, if any, granted hereunder shall automatically and immediately terminate. 3PSP shall immediately return to HP at 3PSP's expense all free-of-charge materials provided to 3PSP by HP for the servicing and support of Eligible HP Consumer Products.

19. GENERAL

A. Any term of this 3PSP Agreement which is held to be invalid will be deleted, but the remainder of these terms will not be affected.

B. HP will not be liable for performance delays or non-performance, due to causes beyond its reasonable control.

C. If either party becomes insolvent, is unable to pay its debts when due, files for bankruptcy, is the subject of involuntary bankruptcy, has a receiver appointed, or has its assets assigned, the other party may cancel any unfulfilled obligations.

D. Neither party may assign any rights or obligations hereunder without prior written consent of the other party. HP may, however, assign any rights and obligations hereunder to another Hewlett-Packard entity at any time subject to written notice.

E. No party's failure to exercise any of its rights under these terms will constitute or be deemed a waiver or forfeiture of those rights.

F. Disputes arising in connection with 3PSP Agreement will be governed by the laws of the State of California, without reference to its conflict of laws principles. The parties hereby submit to the jurisdiction of, and waive any venue objections against state and federal courts in Santa Clara County, California in any litigation arising out of this 3PSP Agreement. HP reserves the right to protect its intellectual property by seeking relief in any court of competent jurisdiction.

G. This 3PSP Agreement and the Program Guide constitute the entire Agreement between HP and 3PSP, and supersede any previous communications, representations or agreements between the parties, whether oral or written, regarding transactions hereunder. 3PSP's additional or different terms and conditions will not apply.

RR POWELL INDUSTRIES
3PSP Company Name

_Robert H. Powell_
Authorized Signature

ROBERT H. POWELL JR.
Typed or Printed Name

OWNER
Title

251-648-1531
Telephone

**HEWLETT-PACKARD COMPANY**

_Sharon L Brunke_
Sharon L. Brunke
U.S. Consumer ASP Program Manager